## UNITED STATES

v.

### John L. THOMAS and Earl J. Butler.
### Crim. No. 6597.

United States District Court
E. D. Virginia,
Richmond Division.
March 12, 1959.

109 F.2d 35, 45, certiorari denied 1940, 309 U.S. 684, 60 S.Ct. 806, 84 L.Ed. 1028.

John M. Hollis, U. S. Atty., Norfolk, Va., for the Government.

R. R. Ryder and David Meade White, Jr., Richmond, Va., for defendants.

STERLING HUTCHESON, District Judge.

During the night of August 14, 1958, John L. Thomas was arrested by agents of the Alcohol and Tobacco Tax Division, United States Treasury Department, upon a charge of violating the Internal Revenue Laws, 26 U.S.C.A. § 5001 et seq., relating to liquor. He was delivered into the custody of the City Police of Richmond for detention overnight and on the following morning transferred into the custody of the United States Marshal. At the time of his apprehension the petitioner had in his possession and on his person the sum of $1,126 in currency. In accordance with the usual procedure in such cases the money was turned over to the appropriate police official at the time petitioner was incarcerated. The following morning when custody of Thomas was transferred to the United States Marshal the currency was turned over to the Marshal. Petitioner was brought from the City Jail by the Marshal to the office of the United States Commissioner in the Post Office Building at Richmond and his bond was fixed by the Commissioner. During the interval between petitioner's arrest on the night of August 14 and prior to his release on bond, which occurred shortly after noon on August 15, acting upon advices from the office of the United States Treasury Department, at Richmond, the appropriate Treasury officer in Cincinnati, Ohio, made a jeopardy assessment against the petitioner in the amount of $2,100. The assessment was to cover the tax allegedly due the United States on certain distilled spirits seized at the time Thomas was arrested on the preceding night. The office of the District Director at Richmond was notified of this assessment and before the release of the petitioner on bond, made formal demand upon the petitioner for payment of the amount of the assessment. Upon failure of Thomas to make payment, the Collection Officer served notice of levy on the Marshal, who thereupon turned over the sum of $1,126 to the Collection Officer. Thomas did not authorize the payment of this money or any part of it by the Marshal. Upon his release from custody pursuant to bond the money was not returned to Thomas.

The essential facts in the case involving Butler are almost identical. He was apprehended at a later date and there was found on his person the sum of $504 in cash and a personal check payable to Earl Butler. When this defendant was taken into custody by the Marshal the money and check were also received by the Marshal for safekeeping. As in the Thomas case, the District Director undertook to make levy under a jeopardy assessment made under similar circumstances. Due to protest from the defendant the money and check were not paid over to the District Director but remain in the possession of the Marshal.

Thomas and Butler have instituted civil actions against the District Director in one case and the Marshal in the other case, seeking return of the funds and have also filed motions in the criminal proceedings, seeking the same object. The questions involved being identical, the cases will be considered together.

The United States has intervened and asserted a number of defenses. It is contended that the Court has no jurisdiction in this controversy and that the levy against the funds in the hands of the Marshal was lawful and valid. Counsel

has cited a number of cases in support of the well-recognized principle that the remedy of an aggrieved taxpayer is to pay the tax under protest and sue for recovery. In other words, the Government is undertaking to treat the matter as an ordinary jeopardy assessment and collection thereon. The law upon that subject is well settled and I have no doubt concerning the correctness of the principle announced in the cases cited. However, as I view the case this does not involve an ordinary jeopardy assessment and collection of tax pursuant thereto. The issue before the Court falls into an entirely different category. These defendants were taken into custody under process of this Court, charged with crime. They had in their possession and on their person certain funds not contraband. The Marshal acted quite properly when he took these funds into his custody. Had the defendants been permitted to retain possession of the funds the money might have been stolen by a fellow prisoner or, conceivably, it might have been used for improper purposes. But the funds went into the hands of the Marshal solely because the possessors were in custody. As before pointed out, at that time no assessment had been made and no lien existed. This fact distinguishes the instant case from those relied upon by the United States. The lien created by the jeopardy assessments in these cases was not in existence when the funds were taken from the prisoners. It is also important to remember that the money was not contraband. The situation of the defendants with respect to this money was analogous to the case of one who appears in answer to process of the Court, and is immune to other process while in attendance. When they were released on bond they were entitled to be released in precisely the same condition as they were when taken into custody; that is, they were entitled to have their funds restored to their physical possession.

The subsequent conviction or acquittal of the defendants is of no consequence. The validity or invalidity of the assessment is immaterial. Irrespective of guilt or innocence, while the accused is in custody under process of the Court he is entitled to complete protection of both his person and such property as has been taken into custody as an incident to the arrest, so long as the property is not contraband. Upon his release, whether on bond or following acquittal, he must be restored in his person and personal effects to the same position he occupied when he was deprived of his freedom of action. The rights of the Government respecting the collection of taxes is fully recognized, but there are methods available to it for the enforcement of the tax laws in an orderly and legal manner. To permit seizure of money under such circumstances as those here under consideration might easily lead to abuse of the criminal process of the Courts to collect a civil liability. Even in those cases in which the taxpayer has been convicted of fraud in connection with tax liability, those charged with the collection of the tax must proceed by civil process.

Some reliance has been had upon the fact that no force was used by the Marshal in obtaining the money. The answer to such a suggestion is that a prisoner making the use of force necessary would probably be guilty of resisting arrest. Certainly the taking custody of the personal effects found on the prisoner was an incident of his arrest. There was no element of voluntary action on the part of the prisoner as would be the case of payment by one not in custody.

It has been suggested that the Marshal is an official of the Executive Branch of the Government and the funds came into his hands as an official of that Branch instead of in his capacity as the official charged with enforcing the orders of the Court. The answer to such contention is that until sentence has been imposed and commitment order entered by the Court, the Executive Branch as such has no jurisdiction over the prisoner or his effects. He is in custody of the Court and the Marshal acts as an officer of the Court, charged with the safe custody of the prisoner not as one convicted

of crime but as one whose guilt or innocence has not been determined.

Orders will be entered directing the return of the money by the District Director and the Marshal, respectively.